E-FILED
Tuesday, 22 September, 2026 04:48:49 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **ROSHANDA ALLEN, et al.** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-cv-3304** |
| | ) | |
| **UNITED STATES POSTAL SERVICE, et al.** | ) | |
| **Defendants.** | ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court are Defendants' Motions to Dismiss (Docs. 79 and 83) and Motion for Partial Summary Judgment (Doc. 80). For the following reasons, the Motions are GRANTED.

## I. PROCEDURAL BACKGROUND

Plaintiffs commenced this action on October 23, 2024, by filing a complaint only signed by her. (Doc. 1 at 7). The Court denied Plaintiffs' Motion for Leave to Proceed *in forma pauperis* and admonished Allen that because she is not a licensed attorney, she cannot represent the other *pro se* plaintiffs named in this action; each plaintiff must sign the complaint and submit a financial affidavit. (Doc. 4). Plaintiffs filed an amended complaint on November 1, 2024 with signatures, and then a second amended complaint on December 26, 2024, which purported to bring a class action claim. Because none of the plaintiffs signed the second amended complaint, it was stricken with leave to refile in an Opinion entered April 11, 2025. (Doc. 28). In that Opinion, the Court again expressed the

well-settled rule that nonlawyers cannot represent others and Plaintiffs could not bring a class action claim without legal representation. (*Id.*).

Plaintiffs filed a third amended complaint on April 22, 2025. (Doc. 29). Defendants moved for sanctions alleging Allen forged signatures of the other plaintiffs in the third amended complaint and in docket entries 32 and 33. (Doc. 35). Before the Court could rule on the outstanding motion, Plaintiffs moved for leave to file a fourth amended complaint which was granted and the complaint filed instanter contained electronic signatures from each plaintiff. (11/25/2025 Text Order; Doc. 73).

In subsequent motions filed by Plaintiffs, Allen continues to purport to represent the other *pro se* plaintiffs. The Court noted Plaintiffs' motions for extensions of time "appear to be completed by one plaintiff and filed on behalf of all plaintiffs." (Doc. 97). Plaintiffs were further admonished that "it is illegal in Illinois and against this Court's Local Rules to practice law without a license. Therefore, a litigant who knowingly prepares and files papers on behalf of other parties or allows a non-lawyer to represent them is subject to sanctions and other penalties for this behavior." (*Id.*).

## II. FACTUAL BACKGROUND[1]

The Fourth Amended Complaint (hereinafter, the "Complaint") contains nine counts brought on behalf of nine *pro se* plaintiffs[2] against the United States Postal Service ("USPS"), Michael Winters, Johnny Bishop, and Stephanie Peters. All counts are brought

[1] Because the motion for partial summary judgment concerns Plaintiffs' administrative exhaustion and Eubanks's failure to prosecute, the Court only considers those documents attached to the motion to the extent they concern those items.

[2] Plaintiff Patrice Green was later voluntarily dismissed from the action. (4/21/2026 Text Order).

on behalf of all plaintiffs. As structured, the Complaint alleges the following claims: 1) Title VII Race Discrimination against USPS; 2) Title VII Disparate Treatment against USPS; 3) Title VII Disparate Impact against USPS; 4) Title VII Retaliation against all defendants; 5) Hostile Work Environment against USPS and Bishop; 6) Title VII "Unequal Enforcement of Discipline" against USPS; 7) Privacy Act Violations, *see* 5 U.S.C. § 552a, against USPS and Winters; 8) Negligent Failure to Supervise against USPS; and 9) Intentional Infliction of Emotional Distress ("IIED") against Winters and Bishop. Plaintiffs do not state the capacities in which each defendant is sued. Defendants moved to dismiss the complaint for failure to state a claim (Docs. 79 and 83) and for partial summary judgment for failure to meet administrative exhaustion requirements (Doc. 80). Defendants also moved for summary judgment on Plaintiff Eubanks's claims for failure to prosecute as he has failed to provide a proper address since at least October 2025. (Doc. 80). Allen has since filed a notice of change of address on behalf of Eubanks. (Doc. 88).

**A. Publication of Criminal Charges and Employment Information**

Plaintiffs allege that Defendant Winters, the Plant Manager at the time for the USPS Processing and Distribution Center in Springfield, Illinois, "initiated a racially targeted and incomplete criminal-background 'investigation' in [August] 2021 that focused overwhelmingly on Black employees," which included Plaintiffs. (Doc. 73 at ¶¶ 1, 3, 26, 35). This investigation purportedly led to all Plaintiffs, except for Tamar Allison, being federally indicted on wire fraud charges in relation to the Paycheck Protection Program administered through the Small Business Administration. In September 2023, a

news outlet published an article that listed the indictments and Plaintiffs' employment information as provided by Winters.[3] (*Id.* at ¶¶ 36–37, 39). Plaintiffs additionally allege unequal enforcement of discipline between the Springfield and Champaign, Illinois facilities. (*Id.* at ¶ 44).

**B. Alleged Harassment and Retaliation Directed at Plaintiff Allen**

In May 2024, Johnny Bishop, President of the American Postal Workers Union Local 239 and USPS employee, "loudly stated he 'couldn't wait for the feds to come put [Allen] in handcuffs' and that they would 'take her away in a couple of weeks,'" which Allen's friend overheard. (*Id.* at ¶ 58). Bishop later made a similar statement about Allen to Plaintiff Williams. (*Id.* at ¶ 62). A meeting was held between Allen, Bishop, and his supervisor, Peters, during which Bishop mentioned Allen's autistic son. (*Id.* at ¶¶ 59–60). The next morning, a children's autism-related toy "was taped to the office window where Allen had met with Bishop and Peters. Allen reported this, but no action was taken." (*Id.* at ¶ 61). Around that time, a union "newsletter distributed around Springfield depicted Plaintiff Allen as a roach on multiple pages." (*Id.* at ¶ 63). Allen reported this to the acting plant manager, Latanya Gant, but no action was taken. (*Id.*).

Allen filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against Winters and Bishop. (*Id.* at ¶ 64). Peters served as Winters's representative at Allen's Equal Employment Opportunity ("EEO") mediation in June 2024 and temporarily became acting plant manager. (*Id.* at ¶¶ 67–68). "Although Gant

[3] Allen was indicted later in 2024. Case No. 24-cr-20017 (C.D. Ill.).

had previously told Allen in May 2024 that she would not be placed off the clock, Peters immediately issued a [pre-disciplinary interview] notice to Allen based solely on her legal case." (*Id.* at ¶ 69).[4]

## III. DISCUSSION

### A. Partial Summary Judgment[5]

#### 1. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008) (quotation omitted). The Court construes all inferences in favor of the nonmovant, *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011), but an inference supported only by "speculation or conjecture" cannot raise a genuine issue of material fact, *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer*, 518 F.3d at 484 (quotation omitted).

---

[4] Plaintiffs include an index of exhibits with several listings, but most are not attached to the Complaint nor contained in subsequent filings. There are four affidavits that are attached to the Complaint which appear to be from named and unnamed parties or others. For example, the first affidavit does not mention the affiant, and the last is from "Trey Maya's boyfriend." None are signed.

[5] The Court notes that Plaintiffs do not substantively contest or engage with any of Defendants' arguments concerning administrative exhaustion on partial summary judgment.

### 2. Title VII Failure to Exhaust Administrative Remedies

Before a plaintiff can bring any Title VII claim, he "must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *Anderson v. United Airlines, Inc.*, 140 F.4th 385, 390 (7th Cir. 2025) (citations and quotation omitted). "'Exhaust' in this context means that the claimant must comply with the relevant preconditions to bringing a lawsuit." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). A federal employee seeking to file a discrimination claim with the EEOC "must contact an EEO counselor 'within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.'" *Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008) (quoting 29 C.F.R. § 1614.105(a)(1)). If this informal complaint does not resolve the matter, the employee is provided with notice of his right to file a formal EEO complaint with the EEOC. 29 C.F.R. § 1614.105(d). The claimant then has 15 days after receiving notice to file the formal complaint. *Id.*; *see also Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001) (citing 29 C.F.R. § 1614.106). If the EEOC refuses to provide the claimant with relief, it will then issue the claimant a right-to-sue letter. *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003). After receiving the letter, the claimant has 90 days to file suit in federal court. *Prince v. Stewart*, 580 F.3d 571, 573–74 (7th Cir. 2009). The "subsequent judicial proceedings [are] limited by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

**i. Failure to File Formal EEO Complaints**

Plaintiffs Rachaundra Donaldson and Maya Egbejimba did not file formal EEO complaints. (Doc. 80 at ¶¶ 22, 25).[6] Defendants are thus entitled to summary judgment on all Title VII claims brought by Donaldson and Egbejimba. Dismissal of these claims is with prejudice as it is too late for either plaintiff to cure the defect. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice and so does not bar the reinstatement of the suit unless it is too late to exhaust."); *Douglas v. Potter*, No. 05-cv-0578, 2007 U.S. Dist. LEXIS 106382, at *5–6 (S.D. Ill. Mar. 2, 2007) (citing *Glisson v. U.S. Forest Serv.*, 55 F.3d 1325, 1326 (7th Cir. 1995)) ("Plaintiff had only 15 days from receipt of that notice to file a formal complaint. She failed to do so, and she cannot now cure that defect. Accordingly, the dismissal of this matter is with prejudice.").

**ii. Untimely EEO Claims**

Plaintiffs Tenneil Baskin, Marcus Jones, and Shawntelle Lynn filed untimely EEO claims. Baskin filed a formal EEO complaint, but her case was dismissed by USPS's National EEO Investigative Services Office ("NEEOISO") for failure to file an informal complaint within the 45-day window. She filed an informal complaint on June 28, 2024, based on conduct occurring in 2023. (Doc. 80 at ¶¶ 16–19). Jones and Lynn similarly failed

[6] Docket entry 80 represents Defendants' Motion for Partial Summary Judgment, which contains a list of undisputed material facts concerning each Plaintiff's failure to complete steps in the Title VII and Federal Torts Claims Act administrative processes, all with citations to the record. (Doc. 80 at 4–13). Plaintiffs failed to respond to these facts in the manner prescribed by Civil Local Rule 7.1(D)(2), so these undisputed facts are deemed as admitted. Civil L.R. 7.1(D)(2)(b)(6). In any event, documents submitted from the administrative process, such as EEOC charges, are public records subject to the Court's judicial notice. *Pierce v. Ill. Dep't of Human Servs.*, 128 F. App'x 534, 535 (7th Cir. 2005); *Booden v. Brookfield Props.*, No. 21 C 1372, 2021 U.S. Dist. LEXIS 217645, at *7–8 (N.D. Ill. Nov. 10, 2021) (collecting cases).

to file within the requisite period. Jones filed an informal complaint on July 7, 2024, based on conduct occurring either on April 18, 2024, or May 13, 2024, and Lynn filed an informal complaint on June 25, 2024, based on conduct occurring in 2023 (*Id.* at ¶¶ 29–39). Each plaintiff later filed a formal complaint, but the NEEOISO dismissed the cases filed by Jones and Lynn as untimely. As a result, the Title VII claims brought by Baskin, Jones, and Lynn are dismissed with prejudice. *See Lapka*, 517 F.3d at 981 ("[A]lthough we have construed this requirement as a statute of limitations rather than a jurisdictional prerequisite, we bar claims if the forty-five day requirement is not satisfied and there is no occasion for equitable tolling.").

**iii. Claims Limited by Nature of Charges**

Plaintiffs Rikkia Williams and Larry Eubanks, Jr., timely filed formal EEO complaints, but their claims in this case are limited by those charges. (Doc. 80 at ¶¶ 41–45; 51–56). "In Title VII cases, the scope of the complaint brought before the administrative agency limits the scope of subsequent civil proceedings in federal court; in other words, plaintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges." *Reynolds*, 737 F.3d at 1099–1100; *see also Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009) ("This court considers a theory raised in court to fall within the scope of an administrative complaint if it is reasonably related to the charges actually set forth in the administrative filing. In other words, . . . the administrative charge and the court complaint must describe the same conduct and implicate the same individuals." (cleaned up and internal quotation marks omitted)).

Williams's complaint was limited to discrimination based on her race and color (Doc. 80 at ¶ 43), and Eubanks's complaint was limited to discrimination based on his race, color, and sex (*Id.* at ¶ 54). Each complaint concerned receipt of a Notice of Removal for "Crime Situation." (*Id.* at ¶¶ 43, 54). As a result, they have exhausted their administrative remedies for the race discrimination claim brought here (Count I). Their disparate treatment, disparate impact, hostile work environment/harassment, and unequal enforcement of discipline claims, in addition, are also exhausted to the limited extent that these claims concern their respective EEO complaint. (*See id.* at ¶¶ 42, 53 (partial acceptances)).

Plaintiff Allen filed three informal EEO complaints. The first was filed on July 24, 2024, concerning her placement in non-duty paid status. (Doc. 80 at ¶ 1). The second was filed on October 3, 2024, which related to a proposed indefinite suspension that she alleged was discriminatory. (*Id.* at ¶ 8). In neither of these cases did Allen file a formal EEO complaint, so those claims are barred here. (*Id.* at ¶¶ 2, 9).

On May 14, 2024, Allen filed her third informal EEO complaint, alleging that "[o]n or around May 13, 2024, [she was] harassed and targeted by management on several occasions, [her] character was defamed, and [she was] put on a list to be investigated for something that had nothing to do with the post office." (*Id.* at ¶ 3). Here, she did file a formal EEO complaint on August 9, 2024, which was found timely by the EEOC. (*Id.* at ¶ 4). Allen received a right-to-sue letter for the claim. (*Id.* at ¶ 7). However, Allen's EEO claim that she was wrongly "put on a list to be investigated" is untimely. The claim is

made in reference to Defendant Winters's "investigation" that led to Plaintiffs' federal indictments alleged here in the Complaint. As pled, the investigation occurred in August 2021. (Doc. 73 at ¶¶ 26–35). Therefore, any claim arising out of this investigation, three years prior, is barred by the statute of limitations.[7] *See* 29 C.F.R. § 1614.105(a)(1) (aggrieved employee must contact an EEO counselor within 45 days of the date of the alleged discrimination).

**3. Federal Tort Claims Act**

Plaintiffs bring two tort claims against USPS and its employees: Count VIII for negligent failure to supervise and Count IX for IIED. The Federal Tort Claims Act ("FTCA") provides that an "action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a); *see also Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003). A federal agency is presented a claim when it receives, in part, "an executed Standard Form 95 or other written notification of an incident." 28 C.F.R. § 14.2(a). "A plaintiff's failure to exhaust administrative remedies before he brings suit mandates dismissal of the claim." *Palay*, 349 F.3d at 425 (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). Here, the undisputed facts demonstrate Plaintiffs did not file any administrative tort claim or SF-95 form relating to this lawsuit and Plaintiffs do not contest dismissal. (Doc. 80 at ¶¶ 62–73); *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466

[7] Notably, Allen did not include the date of the investigation in her EEO complaint, which might explain why the EEOC found her claim timely.

(7th Cir. 2010) (failure to respond to an argument results in waiver). Therefore, Defendants are entitled to summary judgment on Counts VIII and IX.

In summary, for the reasons discussed, Defendants are entitled to summary judgment on the claims alleged in Counts I through VI by Plaintiffs Lynn, Egbejimba, Donaldson, Baskin, Allison, and Jones. The remaining plaintiffs' claims in Counts I through VI are limited to the extent described above. Defendants are also entitled to summary judgment on any claim relating to the August 2021 investigation by Defendant Winters filed by any Plaintiff. Lastly, Defendants are entitled to summary judgment on Counts VIII and IX.

**B. Motions to Dismiss**

As addressed, many of Plaintiffs' claims are barred for failure to exhaust administrative remedies or limited by the nature of the charges filed with the EEOC. The Court discusses the sufficiency of Plaintiffs' employment discrimination and privacy claims pertaining to Defendants' motions to dismiss in the paragraphs below.

**1. Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges whether a complaint has stated a claim upon which relief can be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations in the complaint as true and construing all reasonable inferences in the plaintiff's favor. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). To survive dismissal, the claim on its face must demonstrate a

plausible right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. A complaint must also "provide the defendant with fair notice of the claim and its basis." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). In review, a district court need not accept a complaint's legal conclusions, *id.*, and may take judicial notice of matters of public record, *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

Furthermore, "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). But "even *pro se* litigants must follow procedural rules." *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) (citation omitted); *see also McNeil v. U.S.*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**2. Failure to State a Claim**

The Court addresses the sufficiency of Plaintiffs' claims in the sections below but notes other deficiencies here. As to the Title VII claims, the only proper defendant is the Postmaster General, who is not named here. Indeed, "[i]t is well-settled in this circuit that, in a Title VII action alleging discrimination in the Postal Service, the only proper defendant is the head of the agency—the Postmaster General." *Ellis v. USPS*, 784 F.2d 835,

838 (7th Cir. 1986); *see also* 42 U.S.C. § 2000e-16(c). Similarly, Plaintiffs claim Winters violated the Privacy Act of 1974, but "only the agency is a proper defendant in an action pursuant to 5 U.S.C. § 552a(g)(1)." *Rowan v. USPS*, No. 82 C 6550, 1984 U.S. Dist. LEXIS 17042, at *1 n.1 (N.D. Ill. May 2, 1984); *see also Moon v. Rivas*, No. 15-cv-890, 2015 U.S. Dist. LEXIS 125713, at *8 (S.D. Ill. Sept. 21, 2015) (citing *Brown-Bey v. United States*, 720 F.2d 467, 469 (7th Cir. 1983)). Plaintiffs' tort claims also fail to name the proper defendant.[8] FTCA actions must name the United States as defendant. *Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008) (citations omitted).

Plaintiffs additionally bring an "Unequal Enforcement of Discipline" claim, but no such cause of action appears to exist, and Plaintiffs do not provide support otherwise. *See Bonte*, 624 F.3d at 466. Therefore, Count VI is dismissed. Unequal enforcement of discipline might form a basis for a Title VII discrimination claim, so the Court will consider the allegations corresponding to it with Plaintiffs' discrimination claims below. *See Erickson*, 551 U.S. at 94 (documents filed *pro se* are liberally construed).

**i. Race Discrimination**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). At the pleading stage, a plaintiff claiming employment discrimination "must advance

[8] Though not separately pleaded as a claim, Plaintiffs allege defamation throughout the Complaint, which would fall within the FTCA and is insufficiently pleaded.

plausible allegations that she experienced discrimination because of her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (citation omitted). In other words, the court must be able to draw a "*plausible* inference that the adverse action suffered was connected to [Plaintiff's] protected characteristics." *Id.* at 777 (citations omitted). The Seventh Circuit has explained that "[a] litigant's best shot at stating a plausible employment discrimination claim is to explain, in a few sentences, how she was aggrieved and what facts or circumstances lead her to believe her treatment was *because of* her membership in a protected class." *Id.* at 777–78 ("[I]n the employment discrimination context, avoiding dismissal requires a plaintiff to describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and to allege a right to relief above a speculative level." (internal quotation marks omitted)).

Plaintiffs allege they "were subjected to adverse employment actions, including emergency placement, indefinite suspension, hostile environment, and forced resignation." (Doc. 73 at ¶ 73). Additionally, "many non-Black" employees in the Champaign facility were not disciplined as harshly as Black employees in Springfield. (*Id.* at ¶¶ 74–77, 92). Plaintiffs claim that, overall, they were treated "less favorably than similarly situated non-Black employees in the same district" that are subject to the same standards. (*Id.* at ¶ 74).

These allegations fall short of stating an employment discrimination claim. Plaintiffs generally do not indicate which of them experienced each adverse action and

by whom, sufficient to put Defendants on notice of the allegations against them. Plaintiffs also do not advance plausible allegations that any difference in treatment, with respect to each, was because of each plaintiff's race. While Plaintiffs did not need to prove the "because of" at this stage, they are required to identify "what facts or circumstances lead [them] to believe [their] treatment was *because of* [their] membership in a protected class." *Kaminski*, 23 F.4th at 777–78. Accordingly, Counts I and II fail to state a claim.

**ii. Disparate Impact**

"A disparate impact claim exists when an employer has adopted a particular employment practice that, although neutral on its face, disproportionately and negatively impacts members of one of Title VII's protected classes." *Adams v. City of Indianapolis*, 742 F.3d 720, 732 (7th Cir. 2014) (quoting *Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002)). "Disparate impact claims require no proof of discriminatory motive." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). In "complex" cases, the complaint must contain sufficient factual content tending to show the employment practice "caused a relevant and statistically significant disparity" between the plaintiff's protected class and non-members. *Id.* at 733. Though in "straightforward" cases, "basic allegations regarding the disparity" will suffice at the pleading stage and, thereafter, plaintiffs "will need to utilize the discovery process to support their allegations with statistical and comparative evidence." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1007 (7th Cir. 2019); *see also Adams*, 742 F.3d at 733 ("[S]ome basic allegations of [statistical methods and comparisons to support their claims] will suffice.").

Here, Plaintiffs allege: "USPS allowed discretionary, uncontrolled, and inconsistent discipline practices to develop between facilities, causing a statistically disproportionate and harmful impact on Black employees at Springfield. The same ELM 665.16 standard was applied differently at Springfield than in Champaign. USPS's policies, as applied, caused systemic harm and unlawful disparate impact." (Doc. 73 at ¶¶ 80–82).[9] Although "subjective or discretionary employment practices" may fall within the ambit of disparate-impact theory when "tainted by bias," *see Adams*, 742 F.3d at 731–32, the comparisons between the disciplinary actions taken against employees in Champaign and Springfield stated elsewhere in the complaint are lacking in detail tending to show some bias that resulted in a disparity disproportionately affecting Black employees (particularly, Plaintiffs in Springfield). Accordingly, Plaintiffs have not stated a disparate impact claim and Count III is dismissed.

**iii. Retaliation**

Before moving on, the Court notes that the allegations for Title VII retaliation only concern Plaintiff Allen, so all other Plaintiffs fail to state a claim. Moreover, any allegations prior to May 2024 cannot serve as a basis for Allen's retaliation claim because

[9] Section 665.16 of USPS's Employee and Labor Relations Manual provides, "Employees are expected to conduct themselves during and outside of working hours in a manner that reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal employees be honest, reliable, trustworthy, courteous, and of good character and reputation. The Federal Standards of Ethical Conduct referenced in 662.1 also contain regulations governing the off–duty behavior of postal employees. Employees must not engage in criminal, dishonest, notoriously disgraceful, immoral, or other conduct prejudicial to the Postal Service. Conviction for a violation of any criminal statute may be grounds for disciplinary action against an employee, including removal of the employee, in addition to any other penalty imposed pursuant to statute." *665 Postal Service Standards of Conduct*, https://about.usps.com/manuals/elm/html/elmc6_024.htm (last visited Aug. 20, 2026).

that is when the alleged protected activity occurred (Doc. 73 at ¶ 66). *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 664–65 (7th Cir. 2006).

"To plead a Title VII retaliation claim, a plaintiff must . . . allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Huri v. Office of the Chief Judges of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015) (citation omitted). In this context, an "adverse employment action" is an "employer's action that would dissuade a reasonable worker from participating in protected activity." *Id.* (citation omitted).

The Court need not address the sufficiency of the allegations here. Allen alleges the retaliatory adverse employment action was her placement in non-duty paid status on July 24, 2024. (Doc. 73 at ¶¶ 68–69). As discussed above, Allen failed to exhaust her administrative remedies as to this claim because she did not file a formal EEO complaint. (Doc. 80 at ¶¶ 1–2). *Ester*, 250 F.3d at 1071 (citing 29 C.F.R. § 1614.106) (federal employees must file a "formal complaint of discrimination within 15 days of receiving notice of the right to do so"). Allen does not contend "waiver, estoppel [or] equitable tolling" apply here. *Id.* (citing *Gibson v. West*, 201 F.3d 990, 993–94 (7th Cir. 2000)). Count IV is dismissed.

**iv. Hostile Work Environment**

A hostile work environment claim based on racial discrimination requires a plaintiff to allege "(1) he was subject to unwelcome harassment; (2) the harassment was based on [his race]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is

basis for employer liability." *Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017) (internal quotation marks omitted). Whether a workplace is objectively hostile depends on the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).

As above, the relevant allegations here concern only Plaintiff Allen, so the other Plaintiffs fail to state a claim. Bishop, who is a USPS employee and the local union president, is alleged to have loudly stated that he "couldn't wait for the feds to come put [Allen] in handcuffs" and they would "take her away in a couple of weeks." (Doc. 73 at ¶ 58). Bishop expressed similar sentiments to others. (*Id.* at ¶¶ 57, 62). Further, a children's autism toy "was taped to the office window where Allen had met with Bishop and Peters," who is Bishop's supervisor, as Bishop had mentioned Allen's autistic son during the meeting. (*Id.* at ¶¶ 60–61). A union newsletter was distributed around the Springfield facility that depicted Allen as a cockroach on several of its pages. (*Id.* at ¶ 64).

These allegations are concerning, but do not make an actionable hostile work environment claim. A "plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered," *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013), and Allen failed to do so. The Complaint contains no allegations that, taken as true, show an adverse change in Allen's work based on

Bishop's alleged conduct—even assuming Bishop's conduct was motivated by racial animus, which was not alleged here. Accordingly, Count V is dismissed.

**v. Privacy Act of 1974**

Plaintiffs failed to plead their Privacy Act claim within the Act's two-year statute of limitations. 5 U.S.C. § 552a(g)(5). "The statute of limitations starts to run when the plaintiff first knew or had reason to know of a violation." *Davis v. U.S. DOJ*, 204 F.3d 723, 726 (7th Cir. 2000). The alleged actions giving rise to the claim occurred on September 13, 2023. (Doc. 73 at ¶¶ 36–37, 94, 96). Plaintiffs did not file their Privacy Act claim until its inclusion in this Complaint, filed on November 25, 2025. Plaintiffs moved for leave to file the Complaint on November 10, 2025. Plaintiffs do not contest that their claim is untimely. *Bonte*, 624 F.3d at 466 (failure to respond to an argument results in waiver). Count VII is dismissed with prejudice.

**C. Severance**

The Court dismisses with prejudice those claims that are not fully exhausted or otherwise barred by the applicable statute of limitations. Remaining are employment discrimination claims by Plaintiffs Williams, Eubanks, and Allen. Each plaintiff appears to have timely filed formal EEO complaints that were either accepted or partially accepted by the agency. (Doc. 80 at ¶¶ 4, 7, 41–44, 52–55).

Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "When a federal civil action is severed, it is not dismissed. Instead,

the clerk of court creates multiple docket numbers for the action already on file, and the severed claims proceed as if suits had been filed separately." *Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011). Based on this case's lengthy procedural history (*see supra*) and the allegations contained in the Fourth Amended Complaint—conspicuously wanting of allegations pertaining to any plaintiff other than Allen—it appears that Allen, *pro se*, has continued to litigate this suit on behalf of the other plaintiffs in spite of this Court's repeated admonitions. To avoid any further prejudice towards the other *pro se* plaintiffs in this case, the Court will allow each plaintiff who has an exhausted claim to have an opportunity to plead it in federal court without the aid of Allen.

As pled here, Plaintiffs do not meet the requirements of Rule 20(a) to be joined in this case, but even if they did, the Court would still grant Defendants' motion to sever their claims. (Doc. 79). *See Abraham v. Group O, Inc.*, No. 16 C 11642, 2018 U.S. Dist. LEXIS 14490, at *14 (N.D. Ill. Jan. 30, 2018) (severing claims even if Rule 20(a) was met); *see also Chavez v. Ill. State Police*, 251 F.3d 612, 631–32 (7th Cir. 2001) (district courts have discretion to deny joinder where it would cause "prejudice, expense or delay" or fail to "comport with the principles of fundamental fairness"); *Lee*, 635 F.3d at 971 ("If other [factual or legal] issues predominate over the common question, the district judge is entitled to sever the suit[.]"). For these reasons, and to promote judicial economy and fairness, the Court finds that just terms exist to sever the claims by Plaintiffs Williams, Eubanks, and Allen into separate actions with each having leave to file a new pleading.

## IV. CONCLUSION

Based on the foregoing reasons, Defendants' Motions to Dismiss and for Partial Summary Judgment (Docs. 79, 80, and 83) are GRANTED. Claims brought by Plaintiffs Shawntelle Lynn, Maya Egbejimba, Rachaundra Donaldson, Tennile Baskin, Tamar Allison, and Marcus Jones are DISMISSED with prejudice. Claims brought by Plaintiffs Rikkia Williams, Larry Eubanks, Jr., and Roshanda Allen are DISMISSED without prejudice. Defendants' Motion to Sever is GRANTED. (Doc. 79). Clerk is directed to SEVER the claims brought by Plaintiffs Williams and Eubanks into separate cases and terminate each from the instant case. Plaintiff Allen has leave to file an amended pleading in the instant case. Williams, Eubanks, and Allen have 21 days to file a pleading in their respective separate case. If Williams and Eubanks wish to proceed in their respective case, they must pay the filing fee or file a Motion for Leave to Proceed *in forma pauperis* with their pleading. Failure to do so may result in dismissal of the case with prejudice. Clerk shall docket the Fourth Amended Complaint (Doc. 73) and this Order in each severed case.

ENTER: September 22, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE